IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STEVEN L. HORNE,                          :

        Plaintiff                     :    Civil Action 2:08-cv-673

v.                                        :    Judge Watson

COMMISSIONER OF SOCIAL                    :    Magistrate Judge Abel
SECURITY,
                                          :
        Defendant

**REPORT AND RECOMMENDATION**

Plaintiff Steven L. Horne brings this action under 42 U.S.C. §423 for review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits ("DIB"). The matter is before the Magistrate Judge for a report and recommendation on the disposition of this matter.

<u>Summary of Issues</u>.

Plaintiff Steven L. Horne filed an application for DIB in January 2004, alleging that he had been disabled since August 27, 2002, at age 44, by rheumatoid arthritis. The administrative law judge ("ALJ") found that Plaintiff did not have a listed impairment, and that he was able to perform light work. Plaintiff has appealed, claiming that the ALJ failed to give proper weight to the opinions of his

1

treating physicians, and that there was not substantial evidence to support the ALJ's conclusion that he could perform light work because questions posed to the vocational examiner at the hearing did not accurately portray his impairments.

**Procedural History.** Plaintiff applied for Title II Social Security Disability Benefits on January 5, 2004, alleging that he had become disabled and unable to work on August 27, 2002 because of rheumatoid arthritis. (R. 70, 84.) His application was denied upon initial review and reconsideration. (R. 42, 47.) Administrative law judges conducted hearings on December 14, 2006 and August 31, 2007, and thereafter found that Plaintiff was not disabled and could perform light and sedentary work. (R. 27-28.) On May 16, 2008, the Appeals Council denied Plaintiff's appeal. He thereupon timely filed this action, on July 14, 2008 (Doc. 2).

**Age, Education, and Work Experience**. Horne was born on October 12, 1957. (R. 81.) He obtained a GED in 1974, and served in the United States Navy from 1974-1976. (R. 384.) He was honorably discharged in 1976, and worked for over twenty years in the field of marine surveying as a surveyor and ship manager (R. 409-410). He last worked in 2002. (R. 408.)

**Plaintiff's Testimony**. The administrative law judge summarized Moore's testimony at the hearing as follows:

2

> The claimant testified that he last worked in August 2002 at a job he performed for 20 years. He worked offshore on a vessel about eight months out of each year. He said that he always felt like he had pulled muscles, and one of his first symptoms was swollen ankles. He said that he now has rheumatoid arthritis in his toes, his right knee, his left and right wrist, his shoulders, and his neck. He said he gets cortisone shots in his wrist and that he takes a variety of medications for his condition. He said, his medications make him feel weak and tired and he feels dizzy when he is out in the sun. He said that his wife must stay home to take care of him, because he cannot do anything. He said that he even has problems sitting. He said that he was bedridden for three months after he quit working until he went on methotrexate.

(R. 24.)

The Plaintiff also testified that his feet hurt sometimes to the extent that he was effectively immobilized and could do nothing other than lie down, and that his toes were deformed. He suffered pain in both wrists, more predominantly his right wrist, but the flare-ups would sometimes alternate. Plaintiff stated that he laid in bed for about eighty percent of his day. (R. 388-394.) He later testified that during a flare-up, he could use his hand, but that motions such as using a doorknob would cause him instant pain. (R. 414.)

### Medical Evidence of Record.

Plaintiff argues that the administrative law judge's decision does not fairly set forth the relevant medical evidence of record. This Report and Recommendation will summarize that evidence in some detail.

3

Physical Impairments.

Lakewood Medical Center. On January 24, 2002, Plaintiff was examined in the emergency room of the Lakewood Medical Center in Morgan City, Louisiana. (R. 144.) He complained of bilateral knee pain which had begun about ten days before. (R. 146.) Dr. Timothy Magann, M.D., examined Plaintiff and found that he had a normal gait and could move all of his extremities, except that he had a decreased range of motion in his knees. (R. 147-149.) Dr. Magann diagnosed Plaintiff with arthritis and discharged him with instructions to conduct a follow-up visit as soon as possible. (R. 149, 152.)

Jay Vega, M.D. On January 28, 2002, Plaintiff visited Dr. Vega complaining of knee pain and swelling for the past four to five days, as well as pain and swelling in his right wrist. (R. 155.) Dr. Vega examined him, and diagnosed him with rheumatoid arthritis, acute tenosynovitis in his right wrist, and an acute right knee flare-up. He prescribed Vioxx and Lorcet. (R. 155.)

V. Kim Newsome, D. O. Plaintiff was referred by Dr. Kim to Dr. Newsome, a rheumatologist, on July 8, 2002. Plaintiff complained of pain and swelling in his wrist, hands, knees, and feet for the past four years, and stated that it was beginning to become difficult to do his job. Dr. Newsome noted that Plaintiff claimed the most severe pain in his right wrist and right knee, and that his condition was causing fatigue, weakness, depression, and insomnia. (R. 155.) He also noted that Plaintiff had tried Celebrex, Naprosyn, Vioxx, and Relafen without significant relief. Dr. Newsome diagnosed Plaintiff with severe progressive

4

seropositive rheumatoid arthritis; he prescribed several medications as well as resting right splints to be worn at night.

  <u>John Kim, M.D.</u> Dr. Kim treated Plaintiff as a general practitioner from March 6, 1988 until at least April 13, 2007. (R. 254.) In a June 28, 2004 submission to the state disability determination agency, Dr. Kim summarized his clinical examination findings to date as follows:

- 2-10-99 Swollen ankles. Wrist & finger knuckles
- 8-12-99 Multiple joint tenderness
- 5-19-00 Stiff joints
- 5-13-02 Marked tenderness over right wrist and right knee
- 8-1-02 Tenderness & swelling on right knee
- 7-18-03 Checked by the Rheumatologist in Canton, Oh
- 10-28-03 Checked by the Rheumatologist in Akron, Oh

(R. 254.)

  In response to questions on the state agency's questionnaire, Dr. Kim stated that Plaintiff had severe joint stiffness in his knees and wrists, a markedly restricted range of motion in his wrist, fingers, and knees, and muscle weakness in his hand grips. (R. 256.) Dr. Kim noted also that Plaintiff was unable to control the fine and gross manipulation of multiple joints in his fingers and wrists, that he had an unstable gait, and that he required a cane for walking. (R. 256.)
Dr. Kim further noted in this submission that Plaintiff had had no good response to rheumatoid medication so far. (R. 253.)

Dr. Kim continued to treat Plaintiff regularly after 2004. On June 22, 2004, he noted that Plaintiff evinced deformed finger joints and toes. On October 5, 2004, he noted multiple joint stiffness and tenderness. On April 7, 2005, Plaintiff reported to him that he had a flare-up of his arthritis, which caused him a lot of pain. (R. 245-251.) On March 23, 2007, Plaintiff visited Dr. Kim for medication refills, and complained that the arthritic pain had moved into his shoulders. (R. 281.)

On August 23, 2007, Dr. Kim wrote a letter "To Whom It May Concern", stating: "[Plaintiff] has Severe Rheumatoid Arthritis, with progressive and disabling conditions. This unables him the use of hands and fingers, and is unable to be productive on any job. These conditions are progressing, even with multiple medications, and has a poor and grave prognosis." (R. 334.)

William C. Wojno, M.D. Dr. Wojno, a rheumatologist, treated Plaintiff repeatedly between at least January 21, 2003 and March 1, 2007 for his rheumatoid arthritis. Dr. Wojno's treatment notes are extensive, and document a history of arthritis symptoms. They include records of office visits from January 21, 2003 (R. 313), February 20, 2003 (R. 312), April 10, 2003 (R. 309), April 23, 2003 (R. 307), May 22, 2003 (R. 302), July 24, 2003 (R. 242), September 5, 2003 (R. 239), October 21, 2003 (R. 236), November 26, 2003 (R. 231), January 28, 2004 (R. 227), March 24, 2004 (R. 219), June 22, 2004 (R. 215), August 4, 2004 (R. 209), October 5, 2004 (R. 205), January 12, 2005 (R. 199), March 9, 2005 (R. 195), June 13, 2005 (R. 280),

6

September 26, 2005 (R. 279), January 3, 2006 (R. 278), April 5, 2006 (R. 277), July 14, 2006 (R. 276), September 1, 2006 (R. 275), October 30, 2006 (R. 274), January 4, 2007 (R. 299), March 1, 2007 (R. 297), and April 26, 2007 (R. 327).

Plaintiff's medical history with Dr. Wojno generally demonstrates long-lasting joint, wrist, and foot pain, swelling, and impaired range of motion. Over the course of his treatment, Dr. Wojno placed Plaintiff on numerous medications, including Methotrexate and self-injected Remicade and Humira, and monitored their use, dosage, and effectiveness. (R. 303, 311, 395.) Dr. Wojno repeatedly stated in his notes that he found no signs of overt synovitis. (*E.g.* R. 200.)

Raj Trapathi, M.D. On April 6, 2004, Dr. Trapathi performed a physical examination for the state disability determination agency. He found Plaintiff's gait to be normal, and that there did not appear to be any deformity, swelling, tenderness, or temperature elevation in his major joints. There was no evidence of any significant deformity, swelling, or tenderness in the interphalangeal joint. (R. 164.) He found no evidence of acute synovitis, and minimal tenderness at the extreme range of motion. (R. 165.) Dorsiflexion of the right wrist was limited to 40° by pain. Flexion of the dorsolumbar spine was limited to 60°. (R. 168.) Flexion of the right knee was limited to 40° by pain. (R. 169.) Horne is left hand dominant. He had normal grasp, manipulation, pinch, and fine coordination in both hands. (R. 166.) Dr. Tripathi concluded that Plaintiff had rheumatoid arthritis, but that he could sit for six to eight hours, stand for six to eight hours, walk for six to eight

7

hours, lift approximately 20-30 pounds, and carry 10-15 pounds. (R. 165.)

Gary W. Hinzman, M.D.  Dr. Hinzman, a state agency physician, conducted a review of Plaintiff's medical records on May 19, 2004. (R. 161.) He concluded that Plaintiff "has normal exam of the joints, normal [range of motion] except slight reduced for the right knee and right hip, normal manipulation. There is no evidence of synovitis. There is no evidence of a severe medical impairment at the present time." (R. 161.)

Gerald W. Klyop, M.D.  Dr. Klyop, a state agency physician, performed a physical residual functional capacity assessment on August 4, 2004. (R. 175.) He opined that Plaintiff could lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk for six hours, sit for about six hours, and that he had an unlimited ability to push or pull. (R. 172.) Dr. Klyop also opined that Plaintiff had no limitations on frequent postural movements, and no manipulative, visual, communicative, or environmental limitations. (R. 173-174.) He found Plaintiff's statements partially consistent with the medical evidence, but stated that Plaintiff had not had much synovitis to date, and that a recent bone scan had showed minimal activity in the left wrist, but not in the right. (R. 172, 175.)

Sedimentation Data and Other Rheumatoid Arthritis Test Results.  Although this information does not appear to have been presented to the ALJ in the form

8

presently before the Court, Defendant attached as Appendix A to his memorandum contra (Doc. 16 at 22) a table summarizing the seventeen blood sedimentation rate tests performed on Plaintiff between February 2002 and July 2007. Of the 17 tests, four had above normal readings (indicative of rheumatoid arthritis) in December 2002, October 2002, February 2003, and July 2007. All the readings between April 2003 and March 2007 were normal. January 21 and February 20, 2003 C Reactive Protein tests – measuring how much protein is in the blood – were abnormal. (R. 321 and 324-25.) A May 2003 antinuclear body test – used to detect autoimmune diseases – was on the higher end of normal. (R. 243-44.) A November 26, 2003 Cyclic Citrullinated Peptide Antibody test was positive and confirmed rheumatoid arthritis. (R. 232.)

<u>X-rays and Other Imaging Tests</u>. November 2003 x-rays of both feet showed no joint space loss and no erosive disease. X-rays of both hands showed no periarticular osteopenia, no joint space loss, and no erosive disease. There was early mild osteoarthritis at the first CMC joint. An x-ray of the right knee showed mild medical compartment narrowing which was unchanged from a previous x-ray. There was no significant joint effusion. (R. 235.)

A February 2004 total body scan showed no evidence of diffuse joint or osseous disease. Particular attention was paid to the hands and wrists, which identified no significant abnormalities. (R. 225.)

9

Paul Boyce, M.D. Dr. Boyce, a doctor of internal medicine specializing in endocrinology and diabetes, testified as an independent medical expert at the hearing. (R. 430.) He summarized the objective evidence from Plaintiff's sedimentation and other laboratory testing, the medications which Plaintiff had been prescribed, and the records of Drs. Kim, Wojno, and Newsome. (R. 424-427.) Dr. Boyce concluded that Plaintiff's condition did not meet or equal a listed impairment, because the relevant listing called for: "joint pain, swelling, tenderness, and signs on current physical examination in two or more major joints. There's no evidence of that on, on the last several exams." (R. 428-429.) Dr. Boyce was also skeptical as to why the record showed no evidence of synovitis, and generally normal sedimentation rates. (R. 426, 431.)

Dr. Boyce also, however, noted the incomplete state of the record:

Q. [By the ALJ] Doctor, you indicated at one point in time that it would be helpful to have testing because of the age of the case. What testing should the doctors have done up to this point? You indicated that there is no examination to confirm the diagnosis.

A. Well, the things that I would, I looked for was where somebody did a real thorough joint examination looking at range of motions, descriptions of all the joints, you know, at least on some semi-annual basis with somebody with rheumatoid arthritis. And I really did not see that candidly since the consultative examination in 2004. There was a, and then the other thing is with the symptoms of the wrist problems I would have anticipated at least x-raying the wrists again to see if there's significant deformity developing in the wrist, erosive changes occurring in the carpal bones because that's what one is looking for is erosive changes.

[...]

ALJ: I have no idea why your doctors are not doing the examinations

that our medical expert suggests. If it's incompetence on his part I don't know, but it's not there. If it's because it's going to cost you an extra amount of money, that is not something that I'm going to have to take into consideration. I want to look at your record and know what's going on with your record. If they haven't done the tests over the past four years I don't know why they haven't.

### Administrative Law Judge's Findings.

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since August 27, 2002, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following severe impairment: rheumatoid arthritis (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work subject to the following restrictions and/or limitations: (1.) He can sit for up to six hours in a work day. He can stand or walk for six hours at work today but only for one hour at a time. (2.) He can not work in temperature extremes or in high humidity. 3. He can climb, bend, squat, crouch, kneel, crawl, or stoop occasionally. (4.) He can not be exposed to direct sunlight. 5. He cannot engage in papermaking.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on October 12, 1957, and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1560(c), 404.1566 and 404.1568(d)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 27, 2002 through the date of this decision (20 CFR 404.1520(g)).

**Standard of Review**. Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It means "'more than a scintilla.'" *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)

(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments**. Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because the ALJ failed to give proper weight to the opinions of his treating physicians, Drs. Wojno and Kim. He also argues that the ALJ posed hypothetical questions to the vocational expert at the hearing which did not accurately portray his impairments, and that the ALJ thereby did not have substantial evidence upon which to base his opinion that Plaintiff could perform other work. (Doc. 12 at 1, 6.)

**Analysis**.

The "treating physician" standard, in 20 C.F.R. §404.1527(d)(2), holds that an administrative law judge is to give more weight to opinions from treating sources, because those are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments. They may bring a unique perspective to the medical evidence unobtainable from the objective medical findings alone or from reports of individual examinations. If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the case record, the ALJ will give it controlling weight. Furthermore, the ALJ will "always give good reasons in our notice of

13

determination or decision for the weight we give your treating source's opinion." There is a rebuttable presumption that a treating physician's opinion is entitled to great deference. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). However, a treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic evidence. *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004).

It is indisputable that Dr. Wojno, a rheumatologist who treated Plaintiff for rheumatoid arthritis over a period of at least four years, is a treating physician for this purpose. As noted above, Dr. Wojno examined Plaintiff on at least twenty-six occasions, prescribed and evaluated various medications, and obtained and reviewed blood work and diagnostic scans. The ALJ's sole reference to Dr. Wojno's opinions was:

> The records of another treating physician, William Wojno, M.D. document some swelling, diminished range of motion, and pain in his affected joints, but his records consistently describe the claimant as stable with respect to his muscloskeletal examinations.

(R. 25.)[1]

---

[1]Plaintiff notes, correctly, that the term "stable" when used in a medical context refers to a condition which is unchanged, not one which is improved, cured, or restored to a correctly functioning state. To the extent that Dr. Wojno's records "consistently describe the claimant as stable", they therefore support Plaintiff's claims that his physical problems of swelling, diminished range of motion, and joint pain had remained substantially the same since 2002. (R. 388.) The ALJ apparently applied the same use of "stable" to Dr. Kim's opinion, stating that his "To Whom It May Concern" letter claiming that Plaintiff had severe rheumatoid arthritis was inconsistent with an examination two weeks earlier in which Plaintiff's condition was found to be "stable" and "unchanged since his last visit." (R. 25.)

14

The administrative law judge's summary of Dr. Wojno's extensive treatment record is quite narrow. The Commissioner had a duty under 20 C.F.R. §404.1527(d)(2) to either give controlling weight to Dr. Wojno's opinions of Plaintiff's condition, or to "give good reasons" why he was doing otherwise. However, Dr. Wojno was not asked by the Commissioner to make a residual functional capacities evaluation, nor do his treatment notes – which are difficult to read – contain any information on the physical limitations imposed by Horne's rheumatoid arthritis. There is some indication that Dr. Wojno filled out disability forms for UNUM (R. 304, 306), but no such forms are included in the record. The administrative law judge's opinion gave greater weight to the medical advisor's testimony than to Dr. Kim's opinion on the issue of disability and the clinical findings in Dr. Wojno's office notes.

The ALJ also discounted the opinion of Plaintiff's other treating physician, Dr. Kim:

> John Kim, M.D. reported that the claimant had markedly diminished range of motion in his fingers, wrist, and knee, that he had an unstable gait and that it was necessary to use a cane for support and safety. He reported no muscle spasm or atrophy, but opined that the claimant was unable to work.
>
> However, his opinion is given little weight, because it is inconsistent with other substantial evidence in the record and the objective clinical findings which are discussed below.

(R. 24.) With respect to Dr. Kim, the ALJ apparently meant that his opinion was inconsistent with the consultive examination of Dr. Tripathi, the opinion of the testifying medical expert, Dr. Boyce, the results of a January 2005 MRI which

15

showed normal results, and the results of a February 2005 whole body bone scan which found no evidence of diffuse joint or osseous disease. (R. 24, 25, 202, 225.)

The ALJ, and the medical expert to whom he gave deference, apparently concluded that the record was incomplete, because the record lacked a thorough and recent examination of Plaintiff's joints to determine swelling, tenderness, and range of motion, and recent x-rays to observe whether deformity was developing. This evidence would be of obvious utility in evaluating the progress of Plaintiff's rheumatoid arthritis, as the ALJ seemed to recognize. Without this information, he could not properly assess the severity of Plaintiff's condition. *See, Smith v. Apfel*, 231 F.3d 433 (7th Cir. 2000) (where an ALJ failed to order current x-rays to determine the extent of arthritis, he could not properly ascertain the progress of such condition).

Furthermore, 20 C.F.R. §404.1512(e) mandates that, where the evidence received from a treating physician is inadequate to determine whether a claimant is disabled, the administrative law judge should obtain additional information from the treating physician. Such additional information can constitute, e.g., additional evidence or clarification from the physician, or a new medical report. 20 C.F.R. §404.1512(e)(1). If such information cannot be obtained from the physician, then the judge may seek a new consultative examination. 20 C.F.R. §404.1512(f).

In the present case, if the ALJ concluded that the records of Plaintiff's long-time treating rheumatologist were not complete or not satisfactory, and especially if those records did not speak to the claimant's residual functional capacity, the ALJ

16

was obliged to contact Dr. Wojno for additional evidence or clarification. *See, e.g., O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003). The ALJ could not, as was apparently done here, simply ignore the treating physician.

The ALJ also seems to have applied an unreasonable interpretation to some of Plaintiff's testimony. The ALJ stated that:

> He said that he was bedridden for three months after he quit working until he went on methotextrate. [...] His medications are monitored and adjusted regularly if liver function studies show a potential for a problem. His medications are effective at controlling his symptoms to the extent that he is functional for purposes of light work.

(R. 24, 26) The ALJ refers to Plaintiff's use of methotrextrate, which was initially prescribed by him by Dr. Wojno.[2] (R. 396.) Plaintiff testified at the hearing, as the ALJ alluded, that when his doctor finally increased his daily dosage to the maximum dosage of eight methotextrate tablets per week, he was no longer bedridden and was able to stand up and move about again. (R. 423.) Plaintiff also testified, as the ALJ alluded, that Dr. Wojno had recently determined that the dosage of eight tablets was causing him liver dysfunction and cut his medication down to a less effective two, pending increases if his liver function improved. (R. 396, 416-417, 427-428.)

Here neither Dr. Tripathi, who performed the disability evaluation examination for the Commissioner, nor Dr. Boyce, who testified as the medical

---

[2] Plaintiff uses numerous other medications, including Vicodin, Plaquenil, and Prednisone, but the record does not indicate an adjustment to any others in response to liver function studies. (R. 418.)

17

advisor, is a rheumatologist. Dr. Wojno, who has had a long-term treating relationship with Horne, is a rheumatologist. Before seeking a consultative examination or seeking the assistance of a medical advisor – both of whom have lesser qualifications to evaluate Horne's rheumatoid arthritis – the ALJ should have attempted to obtain a residual functional capacity evaluation by Dr. Wojno supported by references to his clinical findings and test results.

Ultimately, the ALJ is the finder of fact. I express no opinion on the ultimate issue of disability. There is evidence going both ways in the record. I only find that it was error for the ALJ to resolve the conflict in the evidence without first attempting to obtain a residual functional capacity evaluation from Horne's treating rheumatologist.

Therefore, I **RECOMMEND** that this matter be **REMANDED** to the administrative law judge for further proceedings. The administrative law judge should, pursuant to 20 C.F.R. §404.1512(e), procure the opinion of Dr. Wojno as to the claimant's residual functional capacity, or, if this information is not available, obtain a new consultative examination of the claimant pursuant to 20 C.F.R. §404.1512(f).

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the party thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgement of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.3d 15, 16 (2d Cir. 1989).

s/Mark R. Abel  
United States Magistrate Judge
